**Opinion issued April 18, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00132-CV

————————————

## BONITA ODUTAYO D/B/A SAMARITAN PARK & RIDE, L.L.C., Appellant

## V.

## CITY OF HOUSTON, Appellee

On Appeal from the 157th District Court
Harris County, Texas
Trial Court Case No. 2011-60424

## MEMORANDUM OPINION

Appellant, Bonita Odutayo, doing business as Samaritan Park & Ride, L.L.C. ("Samaritan"), challenges the trial court's order granting the plea to the jurisdiction of appellee, the City of Houston ("the City"), in her suit against the

City for declaratory relief, injunctive relief, and violations of the Equal Protection Clause[1] and the Due Process Clause[2] of the Texas Constitution. In three issues, Odutayo contends that the trial court erred in granting the City's plea to the jurisdiction and not allowing her the opportunity to replead her case and cure any jurisdictional defects.

We affirm.

## Background

In her first amended "Application for Temporary and Permanent Injunction," Odutayo alleges that Samaritan leases parking spaces and golf carts at 8800 South Main Street to customers attending events at Reliant Stadium. Samaritan had continuously engaged in this activity from 2002 until October 2, 2011, when one of Samaritan's golf carts was "stopped and ticketed" by a Houston Police Department ("HPD") officer who "threatened" to arrest the driver and impound the golf cart. The City prohibited Samaritan's leasing of golf carts "by calling them taxis and/or citing them for failure to be registered or inspected." In her pleading, however, Odutayo asserts that, under the Texas Transportation Code, golf carts are not required to be registered or inspected. Thus, as a result of the City's "discriminatory and unlawful act," Samaritan "lost an undeterminable

---

[1]    TEX. CONST. art. I, § 3.

[2]    TEX. CONST. art. I, § 19.

2

amount of money" and "suffered irreparable injury or serious impairments in the use of its personal property," even though other businesses were allowed "to utilize the public highway of the state with [their] golf carts." Asserting that the City's actions violated her rights under the Equal Protection and Due Process clauses of the Texas Constitution, Odutayo asks that the City be enjoined from prohibiting her leasing of golf carts. She also seeks a declaration that the provisions of the Texas Transportation Code relating to golf carts[3] are unconstitutional as applied to her.

In its answer, the City generally denies Odutayo's allegations and asserts that it is entitled to governmental immunity regarding all of Odutayo's claims and the trial court has no subject-matter jurisdiction to consider claims "relating to pending criminal actions." The City asserts that Odutayo's damages, if any, resulted solely from her criminal conduct, she failed to mitigate her damages, the City's actions are within the valid exercise of its police power, and Odutayo's claims lack ripeness, were fraudulently made in order to confer jurisdiction, and are barred by res judicata and collateral estoppel.

In its plea to the jurisdiction, the City asserted that Odutayo had filed a prior suit, asking the trial court to declare that article 46 of the City's Code of Ordinances, which regulates and requires permits and licenses for "low-speed

---

[3] *See* TEX. TRANSP. CODE ANN. §§ 551.402, 551.403(a)(3) (Vernon 2011).

3

shuttles," does not apply to golf carts.[4] In that suit, the City filed a "Motion to Dismiss for Want of Jurisdiction and as Moot," in which it stipulated that the ordinances in question did not apply to golf carts and moved to dismiss Odutayo's suit because there was no real controversy between the parties. The City also asserted that any opinion would be advisory, Odutayo's claim for injunctive relief was moot, and Odutayo did not plead any facts supporting her constitutional claims. In its reply to Odutayo's response to its motion to dismiss, the City further argued that Samaritan's golf-cart operation violated the Texas Transportation Code.[5] After a hearing, the trial court granted the City's motion to dismiss Odutayo's first suit because, "among other reasons," the City had stipulated that the ordinance in question did not apply to golf carts. In its instant plea, the City asserts that the "only difference" between Odutayo's first suit and her present suit is that she now challenges the constitutionality of the pertinent Texas Transportation Code provisions. However, the City asserts that it retains "sovereign immunity" against "actions taken," or a declaration of "rights," under the Texas Transportation Code. It also asserts that the proper defendant in the instant suit is the State of Texas, not the City.[6]

---

[4]      HOUSTON, TEX., CODE §§ 46.371–46.426 (2012).

[5]      *See* TEX. TRANP. CODE ANN. §§ 551.402, 551.403(a)(3).

[6]      Odutayo non-suited her claims against the State of Texas.

4

In her response to the City's plea, Odutayo asserts that the City "does not restrict other drivers from the use of their golf carts on public streets" but "only restricts" Samaritan from doing so. Unlike her first suit, Odutayo's instant suit "is not based upon Houston issuing citations" under its ordinances but rather its "characterization of golf carts as being illegal" under the Texas Transportation Code and its "selective enforcement" of that statute. Odutayo asserts that governmental immunity "does not bar suit for injunctive relief against a governmental entity to remedy violations of the state constitution." And Odutayo attached to her response photographs of other people allegedly operating golf carts on Main Street.

Odutayo also attached to her response her affidavit, in which she testified that Samaritan leased golf carts to customers "in a manner consistent" with the Transportation Code, the golf carts were insured and all "equipped with headlamps, taillamps, reflectors, parking brakes, seat belts and mirrors." She further stated that HPD Officer R. Prince cited the golf-cart drivers "for no registration or inspection sticker" and "referenced Texas House Bill 2553 as his legal authority."[7] She attached to her response the affidavits of Keith Smith and

---

[7] Texas House Bill 2553 includes provisions relating to golf carts, which are codified at sections 551.401 through 551.405 of the Texas Transportation Code. Tex. H.B. 2553, 81st Leg., R.S. (2009).

Okunlola Odutayo, who both testified that they received citations for driving the golf carts that they had leased from Samaritan.

After a hearing, the trial court sustained the City's plea and dismissed Odutayo's suit for want of jurisdiction.

### Plea to the Jurisdiction

In her first issue, Odutayo argues that the trial court erred in granting the City's plea to the jurisdiction because her suit "against the City of Houston police officers" is a "challenge to the discriminatory enforcement" of the pertinent Texas Transportation Code provisions. *See* TEX. TRANSP. CODE ANN. §§ 551.402, 551.403(a)(3) (Vernon 2011). She asserts that her constitutional claims "are still viable and deserve to be heard" regardless of whether the City has immunity[8] for her claim under the Texas Uniform Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–37.011 (Vernon 2008).

In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's subject-matter jurisdiction by alleging a valid waiver of immunity. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.

---

[8] Both parties state that the City is asserting sovereign immunity in this case. Although the terms "sovereign immunity" and "governmental immunity" are often used interchangeably, sovereign immunity "extends to various divisions of state government, including agencies, boards, hospitals, and universities," while governmental immunity "protects political subdivisions of the State, including counties, cities, and school districts." *See Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self–Insurance Fund*, 212 S.W.3d 320, 324 (Tex. 2006).

2003).  To determine whether the plaintiff has met that burden, we consider the facts alleged by the plaintiff and, to the extent that it is relevant to the jurisdictional issue, the evidence submitted by the parties.  *Id.* (quoting *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 1993)).  "[I]f the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend."  *County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002).  Because immunity from suit defeats a trial court's subject-matter jurisdiction, immunity from suit may properly be asserted in a plea to the jurisdiction.  *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).

The State's sovereign immunity extends to various divisions of state government, including agencies, boards, hospitals, and universities.  *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 324 (Tex. 2006); *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 n.11 (Tex. 2006).  The appurtenant common-law doctrine of governmental immunity similarly protects political subdivisions of the State, including counties, cities, and school districts.  *Ben Bolt-Palito*, 212 S.W.3d at 324; *see also Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).  A political subdivision enjoys governmental immunity from suit to

7

the extent that immunity has not been abrogated by the Legislature. *See Tex. Natural Res. Conservation Comm'n v. IT–Davy,* 74 S.W.3d 849, 853 (Tex. 2002).

### Constitutional Claims

In her petition, Odutayo asserts that the pertinent Texas Transportation Code provisions are "unconstitutional as applied [to her] due to selective enforcement" under the Equal Protection Clause and the Due Process Clause. *See* TEX. CONST. art. I, §§ 3,19. Texas law generally does not shield state officials from suits for equitable relief for a violation of constitutional rights. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009) (explaining that State has waived sovereign immunity for suits seeking declarations regarding validity of statutes); *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007) (concluding that suit for injunctive relief stemming from alleged constitutional violations may be filed against governmental entity); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) (distinguishing between suits seeking to declare statute unconstitutional and suits seeking damages as remedy for allegedly unconstitutional act and concluding that only second type of suit is impermissible). However, the waiver from immunity exists only if the plaintiff has pleaded a viable constitutional claim. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011); *see also City of Houston v. Johnson*, 353 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.], pet. denied) ("[I]f the plaintiff fails to plead a viable claim, a

8

governmental defendant remains immune from suit for alleged equal-protection violations.").

An equal-protection challenge under the state constitution is analyzed in the same way as those asserted under the federal constitution. *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002). Like the federal constitution, the Equal Protection Clause of the Texas Constitution directs governmental actors to treat all similarly situated persons alike. *Sanders v. Palunsky*, 36 S.W.3d 222, 224–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3253–54 (1985)).

A claim of discriminatory or selective enforcement is based on the constitutional guarantee of equal protection under the law. TEX. CONST. art. I, § 3; *see generally Yick Wo v. Hopkins*, 118 U.S. 356, 6 S. Ct. 1064 (1886). To establish a selective enforcement claim, a plaintiff must show that she has been singled out for prosecution while others similarly situated and committing the same acts have not. *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 275 (Tex. App.—Austin 2007, pet. denied). It is not sufficient, however, to show that the law has been enforced against some and not others. *State v. Malone Serv. Co.*, 829 S.W.2d 763, 766 (Tex. 1992); *Combs*, 239 S.W.3d at 275. The plaintiff must also show that the governmental entity has purposefully discriminated on the basis of such impermissible considerations as race, religion, or the desire to prevent the

9

exercise of constitutional rights. *Malone*, 829 S.W.2d at 766; *Combs*, 239 S.W.3d at 275.

In order to bring a due-process claim, the plaintiff must assert a liberty or property interest that is protected by article I, section 19 of the Texas Constitution. *See Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 671 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The Due Process Clause is only activated when there is some substantial liberty or property interest which is deserving of procedural protections."). If the plaintiff does not assert a protected interest, the trial court lacks jurisdiction over the suit. *See Nat'l Collegiate Athletic Ass'n v. Yeo*, 171 S.W.3d 863, 870 (Tex. 2005) (holding plaintiff "asserted no interests protected by article I, section 19 of the Texas Constitution" and her claims had to be dismissed); *Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559, 564 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding trial court lacked jurisdiction over due-process claim in absence of "a constitutionally protected property or liberty interest"). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Yeo*, 171 S.W.3d at 870 n.19 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)).

10

Here, in her first amended petition, Odutayo argues that the City applied the Texas Transportation Code against her "in an unconstitutional and discriminatory way" because, although the City "prohibited the use of Samaritan's golf carts," it allowed "other businesses" to do the same. However, at no point in her petition does Odutayo allege that the City has purposefully discriminated against her on the basis of impermissible considerations such as race, religion, or the desire to prevent the exercise of constitutional rights, as required to plead a claim for selective enforcement under the Equal Protection Clause. Thus, we conclude that Odutayo has failed to plead an equal-protection claim which would give rise to a waiver of governmental immunity by the City. *See Long v. Tanner*, 170 S.W.3d 752, 755 (Tex. App.—Waco 2005, pet. denied) (holding that plaintiff's failure to "assign any constitutionally impermissible bases" for decision to arrest him but not others was "fatal to his equal protection claim").

Odutayo also pleads for relief under the Due Process Clause, asserting that "[t]he due process rights that have been violated are both procedural and substantive." However, Odutayo fails to plead what specific property right or liberty interest, if any, is involved, or what process is due to her. Although she asserts that she "owns the property and is the provider of services," it is undisputed that the City did not seize her golf carts; rather, it ticketed Samaritan's customers. Because Odutayo has failed to plead what specific property right or liberty interest

11

she had been deprived of, or what procedure she is entitled to, we conclude that she has failed to plead a due-process claim. *See, e.g., City of Dallas v. Saucedo-Falls*, 268 S.W.3d 653, 663–64 (Tex. App.—Dallas 2008, pet. denied) (holding pleadings insufficient to assert due-process claim where it did not allege what process plaintiffs were due, how the City's action was arbitrary or capricious, or how the City denied plaintiffs opportunity to be heard); *see also Tex. St. Bd. of Nursing v. Pedraza*, No. 13-11-00068-CV, 2012 WL 3792100, at *4 (Tex. App.—Corpus Christi Aug. 31, 2012, pet. filed) (holding plaintiff did not invoke trial court's jurisdiction regarding her due-process claim because pleadings did not allege specific property right or interest or what process was due).

### *Declaratory Judgment Act*

The purpose of the Uniform Declaratory Judgments Act (UDJA) is to establish existing "rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a) (Vernon 2008). Section 37.004(a) specifically provides as follows:

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

12

*Id.* § 37.004(a) (Vernon 2008). The UDJA does not grant jurisdiction; it provides a procedural device for deciding cases already within a court's jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). Consequently, immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against the State for which the legislature has not waived immunity. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

The UDJA waives governmental immunity (1) for claims challenging the validity of an ordinance or statute and (2) for ultra vires claims against state officials who allegedly act without legal or statutory authority or who fail to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 & n.6 (Tex. 2009); *IT–Davy*, 74 S.W.3d at 855. The UDJA further provides that,

> In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(b) (Vernon 2008).

As stated above, Odutayo failed to properly assert a constitutional challenge of the statute in question under either the Due Process Clause or the Equal Protection Clause. We further note that although Odutayo appears to challenge the validity of certain sections of the Texas Transportation Code, she brings the

present action against only the City; she did not join the Texas Attorney General as required by the DJA.[9] *See id.*

And, to the extent that Odutayo challenges the actions of state officials under the Texas Transportation Code, the Texas Supreme Court has explained that such actions are properly made as ultra vires claims to require state officials to comply with statutory or constitutional provisions. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011); *Heinrich*, 284 S.W.3d at 372. In ultra vires suits, "the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit." *Heinrich*, 284 S.W.3d at 372–73. Again, here, Odutayo brings the instant suit only against the City and not any government officers. Thus, to the extent that her pleading raises any ultra vires claims, the City retains governmental immunity for those claims.

We conclude that Odutayo has not pleaded a cause of action for which the trial court retained jurisdiction. Accordingly, we hold that the trial court did not err in granting the City's plea to the jurisdiction.

We overrule Odutayo's first issue.

---

[9]    Odutayo, in fact, non-suited her claims against the State of Texas in the instant suit.

14

**Opportunity to Amend**

In her second and third issues, Odutayo argues that the trial court erred in not allowing her an opportunity to amend her pleadings because any alleged defects in her pleadings are curable.

A plaintiff generally deserves a reasonable opportunity to amend defective pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction. *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). If, however, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to replead. *Id.*

Here, Odutayo asks only to replead her claim under the UDJA as an ultra vires claim, presumably to add government officers to the suit. However, even were she able to add government officials to the suit, she would still have to assert the same defective equal-protection and due-process claims against them. Accordingly, we conclude that an amended petition could not have cured the jurisdictional defects in Odutayo's petition. *See, e.g., Edwards v. City of Tomball*, 343 S.W.3d 213, 223 (Tex. App.—Houston [14th Dist] 2011, no pet.).

We overrule Odutayo's second and third issues.

**Conclusion**

We affirm the order of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Massengale.